UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELE DEHART, THOMAS
BERGGREN, JEROME MCCANN,
MARGARET FILARDO, DAVID BENNER,
and HENRY FRANZONI,

        Plaintiffs,

    v.	Civil No. 06-369-HA

BONNEVILLE POWER ADMINISTRATION,
and STEPHEN WRIGHT, Administrator,	OPINION AND ORDER
Bonneville Power Administrator (in his
individual capacity),

        Defendants.

HAGGERTY, Chief Judge:

    Plaintiffs brought this action against defendants Bonneville Power Administration (BPA) and Stephen Wright (Wright) alleging retaliation stemming from their employment at the Fish

PAGE 1 - OPINION AND ORDER

Passage Center (FPC). Defendants have filed a Motion to Dismiss [22]. For the following reasons, defendants' motion [22] is GRANTED.

## BACKGROUND

Plaintiffs work at the FPC. The primary purpose of the FPC is to provide technical assistance and information to fish and wildlife agencies and tribes specifically, and to the public in general, on matters related to juvenile and adult salmon and steelhead passage.

Plaintiffs claim that defendants violated their rights under the First and Fifth Amendments to the United States Constitution by failing to renew a one-year cooperation agreement between BPA and Pacific States that was set to expire by its own terms on March 19, 2006. Neither Pacific States nor the FPC is a party to this action and there is no claim that defendants violated any terms of BPA's one-year grant with Pacific States.

By enacting the Northwest Power Act (NPA), Congress has required that the Pacific Northwest Electric Power Planning and Conservation Council (the Council) adopt a program to protect, mitigate, and enhance fish and wildlife (the Fish and Wildlife Program). 16 U.S.C. § 839(h)(1)(A). The NPA instructs the Council to develop the Fish and Wildlife Program on the basis of recommendations, supporting documents, views and information obtained through public documents, information obtained through public comment, and consultation with affected agencies, Indian tribes, and electric customers.

In 2000, the Council adopted the Columbia River Basin Fish and Wildlife Program (the 2000 Program). In 2003, the Council adopted the Mainstem Amendments to the 2000 Program (the 2003 Mainstem Amendments). The 2000 Program and the 2003 Mainstem Amendments comprise the Council's Fish and Wildlife Program.

The 2003 Mainstem Amendments call "for the continued operation of the Fish Passage Center." The Mainstem Amendments require that the FPC "shall continue to provide an empirical database of fish passage information for use by the region."

In August 2005, the Council recommended that BPA continue to fund the FPC for fiscal year 2006. In November 2005, Congress adopted the Appropriations Act for fiscal year 2006. The Appropriations Act makes no reference to funding for the FPC. However, a conference committee declared the following:

> [BPA] may make no new obligations in support of the Fish Passage Center. The conferees call upon [BPA] and [the Council] to ensure that an orderly transfer of the Fish Passage Center functions (warehouse smolt monitoring data, routine data analysis and reporting and coordination of the smolt monitoring program) occurs within 120 days of enactment of this legislation.

Conference Committee Report, H.R. 109-275. Plaintiffs assert that the conference committee report language specific to BPA and the FPC was "inserted at the insistence of BPA Administrator Wright, United States Senator Larry Craig, and hydropower industry employees, representatives or supporters." Complaint ¶ 20.

Plaintiffs allege that in related litigation before Judge Redden, *National Wildlife Federation v. National Marine Fisheries Service* (*NWF*), CV 01-640-RE, the court relied on data gathered by the FPC in granting an injunction that required BPA to provide spill to avoid irreparable harm to the salmon species. Plaintiffs believe that the data they provided was viewed negatively by BPA, former Senator Craig[1], and others supportive of the hydropower industry. Senator Craig issued several statements calling into question the methods and objectivity of the FPC's work.

---

[1] Senator Craig resigned effective September 30, 2007.

PAGE 3 - OPINION AND ORDER

Plaintiffs assert five claims. Plaintiffs' first and second claims for relief allege that defendants BPA and Wright, respectively, violated plaintiffs' First Amendment rights to communicate information involving a matter of public concern, and to associate and communicate with officials and citizens of tribal and state governments in order to provide information, data, and timely analysis of issues. Plaintiffs assert that in retaliation for their publication of data and information, BPA has refused to renew the annual contract/grant that has supported the work of the FPC and its employees for the past twenty years; demoted and/or transferred several plaintiffs to positions with little or no opportunity to communicate with tribal and state officials or members of the public; and notified three plaintiffs that they would be terminated effective March 19, 2006.

Plaintiffs contend that the defendants' retaliatory actions have been intended to chill their ability to speak on matters of public concern, participate as witnesses in court; or prepare and publish information that could be used in litigation. Plaintiffs contend that Wright has sanctioned the actions taken against plaintiffs not to serve any legitimate administrative purpose but rather with the intent to chill plaintiff's First Amendment rights.

The third and fourth claims for relief assert violations of due process, against BPA and Wright, respectively. These claims contend that BPA's failure to provide any means for plaintiffs to challenge the allegations against them or the elimination of their positions violated their rights to due process.

Plaintiffs assert that they have a property interest in continued employment as specifically identified beneficiaries to contracts issued and funded by the BPA over the last twenty years. Plaintiffs also claim an expectation of continued employment arising from the mandate of the 2003 Mainstem Amendments. Plaintiffs also assert they have a liberty interest in maintaining

and preserving their professional reputations, alleging that these interests have been damaged as a result of the defendants' reliance on unsupported allegations unfairly criticizing plaintiffs' work.

Plaintiffs' fifth claim is that Wright prevented plaintiffs from testifying before the court, and from associating and communicating with persons and organizations who are before the court as witnesses or parties. Plaintiffs assert that Wright's conduct was intentional, willful, malicious and reckless, and that they suffered severe stress and anxiety, damage to their reputations, loss of employment, and other injuries.

One day after the Complaint was filed the Ninth Circuit granted an emergency stay pending review of two cases, *Northwest Environmental Defense Center v. Bonneville Power Administration*, CA No. 06-70430, and *Confederated Tribes & Bands of the Yakima Indian Nation v. Bonneville Power Admininistration*, CA. No. 06-71182, and ordered BPA to continue "its existing contractual arrangement to fund and support the Fish Passage Center under the existing terms and conditions." See Defendants' Notice of Development in Related Cases, filed March 21, 2006.

The Ninth Circuit consolidated those two cases and issued an opinion on January 24, 2007. *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin. (Northwest Environmental)*, 477 F.3d 668 (9th Cir. 2007). The court first found jurisdiction, finding that BPA's decision to solicit replacement contractors for the FPC led to the "final action of transferring the functions of the FPC" to Pacific States and other entities. *Id*. at 678. Under the NPA, the circuit court is granted original and exclusive subject-matter jurisdiction over challenges to "final actions and decisions taken pursuant to [the NPA] by the Administrator [of BPA] or the Council, or the implementation of such final actions." *Id*. at 678 (citing 16 U.S.C. § 839f(e)(5)). Accordingly,

PAGE 5 - OPINION AND ORDER

the court found that BPA's solicitation was a "final action" under the NPA, and fell squarely within the Ninth Circuit's original and exclusive jurisdiction. *Id.* at 678-79.

The court then found that BPA acted contrary to law when it concluded, based on Congress's committee report language, that it was bound to transfer FPC's functions to contractors. *Id.* at 682. The court set aside BPA's decision to transfer the functions of the FPC and ordered BPA to "continue its existing contractual arrangement to fund and support the FPC unless and until it has established a proper basis for displacing the FPC." *Id.* at 691.

## ANALYSIS

Defendants assert that all claims brought against BPA should be dismissed for lack of subject matter jurisdiction. Defendants also contend that all claims against Wright should be dismissed for failure to state a claim. After the Ninth Circuit's decision in *Northwest Environmental*, defendants submitted a Notice of Supplemental Authority contending that the ruling in *Northwest Environmental* moots any claims for relief against BPA and the due process claims against Wright.

### A. Claims Against BPA – Subject Matter Jurisdiction

As noted above, the NPA vests the Ninth Circuit with exclusive jurisdiction over all cases challenging BPA's final actions and decisions under the Project Act. 16 U.S.C. § 839f(e)(5). The NPA is the "sole means of obtaining judicial review for those classes of claims covered by the statute." *Confed. Tribes of the Umatilla Res. v. BPA*, 342 F.3d 924, 929 (9th Cir. 2003) (citation omitted). The Ninth Circuit interprets its jurisdiction under the NPA broadly, and, in turn, narrowly defines the district court's jurisdiction. *Pac. Power & Light v. BPA*, 795 F.2d 810, 814 (9th Cir. 1986).

the court found that BPA's solicitation was a "final action" under the NPA, and fell squarely within the Ninth Circuit's original and exclusive jurisdiction. *Id.* at 678-79.

The court then found that BPA acted contrary to law when it concluded, based on Congress's committee report language, that it was bound to transfer FPC's functions to contractors. *Id.* at 682. The court set aside BPA's decision to transfer the functions of the FPC and ordered BPA to "continue its existing contractual arrangement to fund and support the FPC unless and until it has established a proper basis for displacing the FPC." *Id.* at 691.

## ANALYSIS

Defendants assert that all claims brought against BPA should be dismissed for lack of subject matter jurisdiction. Defendants also contend that all claims against Wright should be dismissed for failure to state a claim. After the Ninth Circuit's decision in *Northwest Environmental*, defendants submitted a Notice of Supplemental Authority contending that the ruling in *Northwest Environmental* moots any claims for relief against BPA and the due process claims against Wright.

### A.    Claims Against BPA – Subject Matter Jurisdiction

As noted above, the NPA vests the Ninth Circuit with exclusive jurisdiction over all cases challenging BPA's final actions and decisions under the Project Act. 16 U.S.C. § 839f(e)(5). The NPA is the "sole means of obtaining judicial review for those classes of claims covered by the statute." *Confed. Tribes of the Umatilla Res. v. BPA*, 342 F.3d 924, 929 (9th Cir. 2003) (citation omitted). The Ninth Circuit interprets its jurisdiction under the NPA broadly, and, in turn, narrowly defines the district court's jurisdiction. *Pac. Power & Light v. BPA*, 795 F.2d 810, 814 (9th Cir. 1986).

In *Pacific Power*, the Ninth Circuit found exclusive jurisdiction where the plaintiffs sought declaratory relief against proposed agency ratemaking. 795 F.2d at 815. The court held that although the utilities' actions arose from their contracts with BPA, BPA's ratemaking proceedings and the agency's obligation to undertake ratemaking in a manner consistent with its contractual commitments were at the heart of the litigation. *Id.* at 815-16.

Here, plaintiffs' alleged constitutional violations arise from the final actions and decisions made by Wright on behalf of the BPA. Those actions were taken while implementing fish and wildlife plans pursuant to the NPA. Plaintiffs' legal theories to the contrary are not controlling. In *Transmission Agency of N. California (TANC) v. Sierra Pacific Power Co.*, TANC brought claims against the BPA for beach of contract and inverse indemnification. 295 F.3d 918, 925 (9th Cir. 2002). The court found that "[i]n examining the nature of the agency action being challenged, our focus is 'on the agency being attacked and whether the factual basis for the attack is an agency action authorized by the [NPA].'" *Id.* (internal citations omitted).

Plaintiffs contend that their claims involve allegations and facts outside the administrative record and require factual findings for which the circuit court is ill-suited to make.

The same argument was made, and rejected, in *TANC*. 295 F.3d at 926. The Ninth Circuit reasoned that "[t]he root cause of the alleged inverse condemnation and breach of contract . . . was a final decision under . . . the [NPA]. We alone have jurisdiction over a challenge to that decision." *Id.* at 927.

Plaintiffs' claims are no different. The root of their due process claims against the BPA is a final decision under the NPA. Moreover, plaintiffs' due process claims cannot be separated from the BPA's final administrative decision. At the core of plaintiffs' contention is a challenge against the BPA's implementation of its fish and wildlife responsibilities. Overseeing these

PAGE 7 - OPINION AND ORDER

responsibilities, like ratemaking as interpreted in *Pacific Power*, falls under the purview of the NPA. Therefore, subject matter jurisdiction over claims brought against BPA in this matter belongs exclusively to the Ninth Circuit. Accordingly, the court grants the government's motion to dismiss all claims against the BPA.

## B. Claims Against Wright – Failure to State a Claim

Defendants contend that plaintiffs' claims against Wright should be dismissed under Fed. R. Civ. P. 12(b)(6). Plaintiffs allege that Wright violated plaintiffs' First Amendment and Fifth Amendment due process rights, and infringed upon plaintiffs' rights to participate in court proceedings. Compl., ¶¶ 47, 64, 72.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations [to survive], a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1959 (2007) (citations and internal quotation marks omitted). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. It remains true that for the purposes of a motion to dismiss, the challenged complaint is construed liberally in favor of the plaintiff, and all factual allegations set forth in that complaint are to be accepted as true. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).

### 1. First Amendment Claim

Plaintiffs acknowledge that "[t]o succeed on their First Amendment claims, plaintiffs must demonstrate that (1) they were subjected to an adverse employment action, (2) they engaged in speech that was constitutionally protected because it touched on a matter of public concern and

(3) the protected expression was a substantial motivating factor for the adverse action." Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 12 (citing *Ulrich v. City & Co. of San Francisco*, 308 F.3d 968, 977 (9th Cir. 2002). However, based on the pleadings, this court finds that plaintiffs' speech was not entitled to constitutional protection.

The Supreme Court recently held that speech made by public employees pursuant to their official duties is not constitutionally protected. *See Garcetti v. Ceballos*, __ U.S. __, 126 S. Ct. 1951, 1960 (2007). In *Ceballos*, the Supreme Court considered whether an internal memorandum written by a deputy district attorney to his supervisors regarding what he believed to be misconduct in an investigation was protected speech under the First Amendment. *Id.* at 1955-57. It concluded that the issue is not only whether the speech in question addresses a matter of public concern, but also whether it is made as a citizen. *Id.* at 1956 (citing *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)).

The Court then determined that the plaintiff did not speak as a citizen when he wrote the memorandum and therefore did not engage in constitutionally protected speech. The Court held:

> The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. That consideration–the fact that Ceballos spoke as a prosecutor fulfilling his responsibility to advise his supervisor about how best to proceed with a pending case–distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline. We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

*Id.* at 1959-60 (internal citations omitted). Ceballos's First Amendment claim failed because, "[w]hen he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee" as opposed to a citizen for purposes of the First Amendment. *Id.* at 1960.

Here, all of the alleged protected speech took place within the context of plaintiffs' official duties with the FPC. Compl., ¶¶ 26, 30, 39-41. Consistent with the Supreme Court's guidance, this court finds that the alleged speech at issue is not constitutionally protected. Accordingly, plaintiffs' allegations of First Amendment violations against Wright are dismissed under Rule 12(b)(6).

### 2.     Fifth Amendment Due Process Claim

Plaintiffs alleged a property interest in their continued employment and a liberty interest stemming from stigmatizing statements made by Sen. Craig, and indirectly, Wright. Defendants argue that plaintiffs have not identified a constitutionally protected interest necessary to maintain a due process claim.

To sustain an unconstitutional stigmatization claim, plaintiffs must identify a public statement "sufficiently egregious to activate the protections of the Due Process Clause." and involving a charge of "immorality or dishonesty." *Hyland v. Wonder*, 972 F.2d 1129, 1142 (9th Cir. 1992). Here, plaintiffs allegations fall short. Wright's statements upon which plaintiffs rely concern scientific neutrality at the FPC. Wright's statements do not address individual plaintiffs or even suggest immorality or dishonesty.

Moreover, the Ninth Circuit has held that an employee attempting to establish the existence of a property interest in continued employment must demonstrate a reasonable expectation based upon state law, rules or regulations concerning discharge or implied promises." *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987). Here, plaintiffs have no reasonable expectation of continued employment. Plaintiffs identify nothing that gives rise to an expectation, contractual or otherwise, to continued funding beyond fiscal year 2006. Additionally, due to the Ninth Circuit's emergency stay and eventual ruling in *Northwest*

*Environmental*, plaintiffs' employment was never terminated because the court required BPA to continue funding the FPC.

Accordingly, plaintiffs' Fifth Amendment claim against Wright is dismissed under Rule 12(b)(6).

### 3. Right to Participate in Trial

Defendants contend that plaintiffs cannot bring a claim pursuant to 42 U.S.C. § 1985(2) because plaintiffs have never been witnesses and, aside from a potential future loss of government funding, plaintiffs identify nothing defendants have done to prevent them from participating in any court proceeding. This court agrees.

Plaintiffs contend that as FPC employees they provided data and analyses to the parties in *NWF*, making them potential witnesses in future litigation. Plaintiffs concede, however, that they have never been called as witnesses in *NWF*. Providing analyses to the court in *NWF* does not make plaintiffs' analysis testimony in that case, nor potential witnesses in a future case.

Without a showing that plaintiffs had been called as witnesses and that Wright had used force, intimidation, or threats to prevent plaintiffs from testifying, plaintiffs' claim under 42 U.S.C. § 1985(2) fails. *See Dooley v. Reiss*, 736 F.2d 1392, 1396 (9th Cir. 1984) (holding that force, intimidation or threats are required to sustain a § 1985(2) claim).

### B. Mootness

Defendants also argue that the Ninth Circuit's recent decision in *Northwest Environmental* moots all claims against the BPA and the due process claims against Wright. This court agrees, concluding that mootness is an independent ground for dismissal.

The starting point for a mootness analysis is the proposition that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before

them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The federal judiciary's preclusion from reviewing moot cases derives from the Constitution's mandate that "the exercise of judicial power depends upon the existence of a case or controversy." *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964).

Plaintiffs' claims against BPA and due process claims against Wright arise from the proposed termination of the FPC contract. That contract has been recently extended by the Ninth Circuit. *Nw. Envtl.*, 477 F.3d at 691 (ordering that the BPA "continue its existing contractual arrangement to fund and support the FPC unless and until it has established a proper basis for displacing the FPC"). Accordingly, this court is unable to fashion a remedy that would affect the rights of the litigants. Without the contract's expiration, no controversy over which this court can exercise its judicial power can be said to presently exist.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss [22] is GRANTED.

IT IS SO ORDERED.

DATED this __4__ day of September, 2007.

                                                     Ancer L. Haggerty
                                            United States District Judge